The next case on our docket is 21-1365, Selena Soule et al versus Connecticut Association of Schools et al. With intervenors Andrea Yearwood and all. May it please the court, I'm Roger Brooks with the Alliance Defending Freedom on behalf of the appellants. I'm pleased to say that my clients are able to join us here in court today. Your honors, the court's holding below was that even if the CIAC policy that's challenged was in fact an unlawful violation of Title IX, even if its operation did deny plaintiffs equal opportunities to participate in elite and post-season competition, even if it resulted in denying them recognition for multiple state championships, the case is nevertheless moot because they graduated from high school. Your honor, that ruling violated basic principles governing mootness. My clients are entitled to present their case. Is it true that all of the plaintiffs have now graduated high school? That's correct, honor. Your honor, the briefs were filed more than a year ago, and at that point we flagged that the two of them had two more seasons ahead of them. The fall and the winter, that year has passed. They have all graduated from high school. And how many- Go ahead. Intervenors as well? Even before that, yes. So the district court's ruling was based largely on the fact that the intervenors had graduated. Now we're in a situation where all of the plaintiffs have graduated. Are you still contending that at least as to the claim for prospective injunctive relief, that that claim is appropriate for our adjudication, or are our hands essentially tied as to the prospective injunctive relief claim because they've all graduated? It's a fair question, your honor. The answer is we are not contending that my clients now are in a position to seek prospective relief. We didn't bring a class action. And in the amended complaint, when two of my clients had already graduated, we didn't seek prospective relief on their behalf. So we acknowledge that what's on the table now and where the district court erred now was failing to give proper weight to the claim for correction of records on the one hand and damages on the other, so your honor's correct. And those are the two things that I would like to address, is the importance of correction of records. Well actually, could you clarify something for, as to the plaintiffs who have graduated, whose records then you'd be asking us to order the correction of, are at least two of them are now enrolled in college, or are they all in college? Yes, they are, your honor. And competing now? They all are or have been and are about to be re-enrolled. COVID has thrown various people's lives for a loop in various ways. But the answer is they all were admitted to one college or another as competitors. But you're saying they continue to be injured in some real way. Are they maintenance of their high school records as they were? We do, your honor. And I would like to, indeed, the thing I would like most to focus on is perhaps the most abstract, but I think actually the most important issue as we think about Title IX, and that's the inherent value of accurate records of earned athletic accomplishment. The durable inherent value. This court said in the McCormick case back in 94, I believe, that a primary purpose of competitive athletics is to strive to be the best. And yes, to be and also to be recognized as. And that right, we believe, we contend, was sufficient in itself to support standing, and yet it was entirely ignored in the district court's opinion. Do most high school athletes devote their utmost efforts to win so that because they think it'll boost their lifetime earnings or their scholarships? The answer is no, they do it to show the world that they have the right stuff. We say, that's one for the record books. We say, he has the heart of a champion, or as Title IX has taught us to say, we say, she has the heart of a champion. And if the record would be altered to go from an eighth place finish to a seventh place finish, is that also of the same kind of enduring import that a championship would be? As your honor is aware, two things. The obvious answer to your question is no, there are gradations, but it doesn't mean that the one is trivial. It's also the case that as your honor is aware, there are specific allegations, it's just a fact, that Chelsea Mitchell lost four state championships in which she was, in fact, the fastest biological female on the track. So we have, and it's also the case the Supreme Court has said that if one plaintiff has standing, then it's not necessary to do a standing analysis for the other plaintiffs to establish that there's a case in controversy. They said the bottom line is, of course there's gradation, but it doesn't matter to the theory of the case. Title IX's goal was to give our daughters an equal chance to be champions. I mean, I guess if it is, and I'm not saying it is trivial, but if it is a trivial injury, does it rise to the level of a, to be sufficient for Article III standing? Well, your honors, being denied a championship, even at the high school level, a state championship, a regional championship, we strongly contend, is not a trivial injury. I know that's your contention, but is there authority for the notion that being deprived of a championship is sufficient for Article III standing? Well, the- Not a sufficient injury. Your honor, certainly this is a case of essentially a first impression. Is there exactly on point case? There is not. But I think that it's actually universally agreed amongst the parties that records matter. We all know, and I'm also going to speak to the pragmatic, let's say dollars and cents value. But let me stick with the abstract cultural value, which is what Title IX was importantly focused on. Trophy shelves exist with old trophies in high schools because we all recognize that the past and history and records matter. The intervenors complained in their brief at page 39 that to correct the records would quote erase their accomplishments. They think it's important. They think the public record matters. The one thing we all agree on is that the public record matters. The question is who's entitled to that women's championship. The CIC rules as we've pled, and is true of the Olympics and others, require a retroactive correction of records if a record is found to have been achieved in violation of the CIC rules. We mentioned that on page 18 of our brief. Here, these records we contend were achieved not in violation of the rule, but in violation of the law, which is an even worse violation. And of course, there's much to be disputed about there. But at the moment, we're simply on the question of mootness and whether my clients have the opportunity to present their case. Let me speak also, if I may, to practical value. The district court dismissed- When the cases teach that when you are talking about the danger of a future injury, that the language that's used is certainly impending, that the possibility of an adverse impact is not enough. How do you deal with that? Well, your honors, I would say two things. One is, first, I believe that the language that you're citing comes from a case of outstanding, and as your honor is aware, the plaintiffs had the burden to establish standing initially, that was not challenged. And when it comes to mootness, the defendants, on the contrary, have the burden, and it's been said by the second circuit, to be a heavy burden. I'm talking about standing, but the possibility of adverse impact is not enough. Do we have something more concrete than the possibility of adverse impact? Your honor, I would point you to the cases in which this court has held, for instance, that an applicant who faces a discriminatory policy, allegedly discriminatory policy, that might affect their chances to get a contract in the future, or to be admitted to a selective state school. In each case, they could- Would you agree there's a difference between being admitted to a select school and moving up from eighth place to sixth place in a high school race? Again, your honor, I think for the thought experiment, it makes more sense to focus on the championship. And I would not agree that in life terms and in the terms of the messages, the purpose of Title IX, that there's an important difference between those two. We believe that the championship is of great value. And let me speak, if I may, to the practical value of a championship on your CV, which the district court dismissed as speculative guesswork. Now, referring to it as speculative was flipping the burden to the plaintiff where it doesn't belong on a mootness claim. It was also wrong as a matter of fact, and as a matter of law. As a matter of fact, high level athletic accomplishments matter on a CV for years to come. I myself was never at all athletic, but I was in a previous life, a partner in a major law firm looking at endless CVs from applicants. And even though it wasn't my experience, if I saw a state level or regional level championship in athletics, I know I'm dealing with somebody who is dedicated to hard work, who doesn't back down, who is serious. And I expect your honors have had the same experience. Certainly, the law knows this. And we've cited, and these are the cases I was looking for on page 20 of our opening brief, the Flint and Hatter cases. I'm sorry, no, this is different cases. We cited the Flint and Hatter cases in which the district court, in which the Second Circuit, the Ninth Circuit in one case, affirmed standing to correct school records after the fact. Because they could affect future employment opportunities. That's the Flint and the Hatter cases. The district court attempted in its decision below to distinguish those. I believe the distinction was baseless. It said the disciplinary records are always relevant to prospective employers, but that athletic achievement relevance is speculative. On the contrary, I think the district court had it exactly backwards. That is, that as an employer, I know this, and I believe you know this, the employer rarely reaches out to a college or a high school and says, send me the disciplinary records. But the athlete is always able to put that important state, that important regional championship on their CV. They always do, and the employer sees it. Your Honor, I've reserved time, I should stop. That's great, thank you, appreciate it. Mr. Murphy. Good morning, your honors. Peter Murphy from Shipman and Goodwin for the CIAC and all of the board defendants today. Although, in the brief, Attorney Zellman, Attorney Monisterski, and Attorney Roberts all contributed their significant sections. Your honors, I'm pleased to hear that the plaintiffs now agree that they're not seeking prospective relief. And that's certainly appropriate since, as your honor noted, they've all graduated, as have the two intervening defendants. So your honors, I'm just going to briefly respond to the two remaining issues. One, the first, whether the district court properly determined that the plaintiffs are not entitled to, don't have standing to seek retrospective injunctive relief, and two, whether the district court properly determined that the plaintiffs claim for monetary damages are barred because the CIAC and the board defendants did not have adequate notice. That the complaint about conduct violated Title IX, turning first to the records issue, since your honors already addressed that. As your honors know, in order to seek injunctive relief, the plaintiffs must show that it is likely not speculative that such relief would address their alleged injuries, and that they would personally benefit from the relief sought. And here, changing the records, the plaintiffs have failed to meet that standard. First, they claimed it was because it would help their educational opportunities, but they're all in college now, so that argument is- Ms. Murphy, can I ask, there was a lot of discussion about sort of the downstream effects or lack thereof of changing these records, why isn't a championship intrinsically intangible but nonetheless valuable such that if the plaintiffs were correct that their clients were improperly denied a championship, why wouldn't that be redressable in its own right without regard to whether or not employers or scholarship considerations were affected? Well, before answering your honor's question, maybe take a quick step back and look at the facts that are pled in the second amendment complaint. These, the four individual plaintiffs, had great success in high school. They won their various, they won several championships. They competed well in high school. They have things- Including beating the intervenors in some races? Including beating the intervenors. Now, I know Attorney Brooks and the district court said Ms. Mitchell might have been denied four championships, meaning if the intervening defendant's records were removed, she was next in line. And I only see two in the second amendment complaint, your honors, and that's in paragraph 91 and And to your honor's point, in one race, an intervening defendant finished first, Ms. Mitchell finished second, and this- So let's assume that there's just one and that it's the one you just named. I want to get back to my question. Why isn't that an intangible but nonetheless real injury if they were right on the merits? And I'm not in any way judging that in this question. Why isn't that a sufficient injury that it would be proper for the courts to redress it? Your honor, we're not aware of, if the intervening defendant's records are stricken. As the district court noted, everyone will know Ms. Mitchell did not win that race. There's no procedure, despite what was said, there's no procedure available to name her the winner of a race if one of the intervening defendants is eliminated. She did not cross the line first. I apologize, your honor. Title IX has pretty broad authority to award relief. And if the records are maintained by one of the defendants in this case, are you saying, again, I guess bracketing the question of whether doing so would unconstitutionally or unlawfully deny the interveners their own record, which I think is a real question one would have to confront, but for the purposes of this standing analysis, why isn't the denial of a single championship enough? Well, I think this would really go to, and as I know we addressed in your brief, your honor, the Steel Company case from the United States Supreme Court said, psychic satisfaction is not an acceptable Article III remedy, because it does not redress a cognizable Article III injury. And here, the plaintiffs might feel, may internally believe they won the race if the intervening defendant's records are stricken, but there's no mechanism to declare them the winner. Wasn't the psychic satisfaction in those cases about the psychic satisfaction of winning the case? I'm sorry, excuse me, your honor. Wasn't the psychic satisfaction at issue there, really the psychic satisfaction of winning the case? So that the desire to have the case generates the standing, I mean, I can see why that's a circular argument. Right, and I think that's what your honor, that's the situation here. If they win the case, they'll have, you know, I apologize, your honor. Psychic satisfaction is just not, they would not be the winner. I guess my point, your honor, what I was struggling to say is there's no mechanism to make them the winner of the race. The races were run, the times are the times, and if they obtain a result that says, that provides them with some relief, there's no relief that can make them the winner of the race, I guess is my point, your honor. So- It's not really answering the question, which is why isn't being deprived of a championship sufficient for standing? Your honor, their proper relief is damages, and we're going to get to that argument in a second, right? Title IX provides for relief in the terms of damage. Now here, we don't agree that it's appropriate. We think the district court properly dismissed it because the CIAC and the Board of Education defendants did not have adequate notice, and that portion of the decision is correct, right? We know, this court knows, that when Congress puts conditions on the recipients of federal funds, they must speak clearly, unambiguously, and they can't impose retroactive conditions. I think, as your honors know from the recent Cummings case, recipients must know what rules they must follow and what sort of penalties are on the table. And that's- So are we transitioning now to the third theory? We're sort of setting aside this question of whether there's standing to continue this case on the second theory, and you're telling us why the third theory failed? I was trying to answer your honor's question in terms of what's their available relief in this case? And the relief available to them, potentially, is damages. But in this case, it's not under Title IX because Judge Shining accurately determined that the CIAC and the Board of Education defendants did not have proper notice. And that's clear based on the language of the statute, the Department of Education letters and about courts of appeals who interpreted Title IX and found that transgender students should be allowed to participate in accordance with their gender identity. So, I see my time's up, your honor. For the rest of the arguments, we would rest on our brief, unless your honors have any additional questions. Thank you. All right. Mr. Block. Good morning, your honors. Joshua Block on behalf of the interveners, Andrea and Terry. This court can also affirm on the merits that plaintiffs have simply failed to stay the claim on which relief can be granted. And that's true for two independent reasons. First, plaintiff's complaint is based on the false legal premise that Title IX creates a federal definition of sex that invalidates the anti-discrimination laws of every state within this circuit and requires schools to treat transgender girls as though they're cisgender boys. Every court to consider the topic of transgender athletes has held exactly the opposite. They've held that Title IX requires schools to treat transgender students consistently with their identity. Of course, the question in this case is even easier. It's not whether Title IX requires inclusive policies, it's whether Title IX prohibits them. I know there are a number of bathroom cases. Are there any circuit cases involving athletics? Circuit cases, there's an appeal currently pending at the Seventh Circuit. That's an appeal from the injunction in Indiana that we submitted supplemental authority on. There's the Ninth Circuit case in Hecox, which has been on appeal, but is- No decisions, in other words. No decisions, yeah. Involving athletics. They're district court decisions. That's correct. That's correct. And of course, this court doesn't have to come close to reaching that issue to find that Title IX at least allows schools to treat transgender students equally. The second major problem with plaintiff's complaint is that even if the court accepted their false legal premise, the allegations in the complaint don't come anywhere close to showing an actual denial of equal athletic opportunity. Plaintiff's complete athletic records, which are incorporated into the complaint by reference, show that they defeated Andrea and Terry on multiple occasions and amassed an impressive collection of first place trophies in the process. The complaint is filled with hypotheticals about a dystopia where cisgender girls disappear from the victory podium. But a complaint requires allegations of facts, not allegations of hypotheticals. Can I, I realize that your focus is on the merits as an alternative to the standing issue, but I'm curious whether you, representing athletes in their own right, have a position on this question of whether, if there were a proper claim that, let's say Cheryl Mitchell wasn't properly denied a trophy, that would be a sufficient injury to support standing? No, your honor, it's absolutely a sufficient injury to support standing. It's just the remedy for that injury is damages. That the races were run under the rules that were in place at the time. There's no allegation of any breaking of the rules by my clients. If the rules were in place at the time were unfair and harmed. If you can get damages, why can't you get a retrospective injunction to correct the record? Well, because the records are already correct. They might have been correct in a way that was discriminatory, but they accurately reflect who won the race based on the rules at the time. And so there's no authority for- But that doesn't go to standing, that goes more to the- Remedy. Right, it's a redressability issue, your honor, not a injury in fact issue. And so they're redressable through damages, including nominal damages, which are supposed to provide a remedy when something doesn't result in financial harm. The issue here is they want to plead around Pennhurst by framing what's really a retrospective injury as a type of prospective injunctive relief claim. So, your honors, we support affirming on the grounds that the district court noted. But we do think these are independent and important bases for alternative grounds for affirmance. I also want to specifically address this issue of reassignment on remand. Reassignment under these circumstances wouldn't be a neutral act. It would have a chilling effect on courts throughout this circuit and be used as a cudgel in future cases to prevent courts from taking basic steps to ensure that everyone who appears in front of them is treated with dignity and respect. The purpose of reassignment is to preserve the interest of justice. Reassignment here would be directly contrary to those interests. I see my time has almost expired. I'm more than happy to answer any other questions the panel has. I think we're set. Thank you very much, counsel. Thank you. Mr. Brooks? Unclear how the time was divided by my colleagues on the other side. First, let me agree with counsel that there are no allegations that the interveners themselves did anything wrong. I just want to be very clear about that up front. Secondly, the argument that my clients were only deprived of their rights sometimes, that is that they won sometimes, is just not an argument in a civil rights context. Can I ask a process question? Yes, your honor. I think we've just heard the argument that if we conclude that there's a basis for justiciability, we can and should affirm on the basis of the merits. This came up to us on a combined motion to dismiss and then the motion around the justiciability issues. You haven't briefed the merits other than to say that if you win on the justiciability issues, we should send it back down. Can you talk a little bit about why that would be the case? I can try to do so, your honor. We barely briefed the merits because of course it came up in an opposition brief. Right, no, I understand. So we didn't have the chance and I probably don't have the time for a full argument. But the answer is, first of all, both of their timeline arguments and their equal protection arguments fundamentally go to whether the reliefs- I'm sorry, let me, just to be clear, I'm not asking you to make your merits arguments now. I'm asking you to explain why we should remand rather than, if we agree with your understanding, rather than reaching the merits. Well, your honors, I mean, there's formal doctrine that says courts can appeal on alternative grounds. But you should remand precisely because it was not addressed by the district court. It was, we did not have an opportunity to fully brief, and we certainly do not have the opportunity today to fully argue that. It's also the case that both those arguments really go to the relief requested. They argue that if you gave us the relief you requested, that would violate their rights. And that has to do, for mootness, they would have to prove and be awarded under any facts that might subsequently developed. And again, that's an important procedural reason. The facts haven't been developed. The district court hasn't had a chance to look at that and see, is there some relief that could, as it were, split the baby or dodge through all the briars in the patch? It's also the case that both the title nine and equal protection claims for differing legal reasons depend heavily on disputed facts, not pure issues of law. Your honors, just to wrap up, the Supreme Court said two terms ago in the Usabunum case that $1 of nominal damages was a sufficient interest to sustain jurisdiction. And I think the fact that the interviewees that are here fighting against a change to the records highlights that recognition as a champion is of far greater value than a dollar. As to damages and Pennhurst, let me just point out that the intent required for an intentional violation under Pennhurst notice is, as the Peterson case said, the intent to do what it did. It is a rare area of the law, if any, in which the required mens rea is intent to violate the law, as opposed to intent to do the act that violates the law. So we think there is no Pennhurst problem here. And finally, back to McCormick, which spoke of a chance to be champions, an equal chance to be champions for our daughters. These young women, meet after meet, saw that in Connecticut, those who are born female didn't have an equal chance. And perhaps more problematic, their little sisters standing on the sidelines saw meet after meet that those born female like them didn't have an equal chance to win. That is contrary to the very heart of Title IX. It's a continuing lesson every time anyone looks at those public records which can be changed or maintained by CIEC and the schools. My clients deserve an opportunity to put on their case, your honors. Thank you. Thank you both. We'll take it under advisement. Appreciate your time.